(82 South. 365)

No. 23322.

MARCEAUX et al. v. MARCEAUX.

(June 2, 1919.)

*(Syllabus by Editorial Staff.)*

INSANE PERSONS ☞2 — INTERDICTION — SENILE DEMENTIA—EVIDENCE.

In a suit by children of defendant, a man of 80, to interdict him on ground of senile dementia, evidence that he could no longer personally attend to his business, that three years before he had married a woman of 26 to look after his household and had made a will giving her one-fourth of his property, and that he was mentally alert and vigorous, though slightly irritable and inclined to neglect in paying his taxes and repairing his place, showed no ground for interdiction.

Appeal from Seventeenth Judicial District Court, Parish of Vermilion; W. W. Bailey, Judge.

Suit for interdiction by Pierre Dupre Marceaux and others against Depreville Marceaux. Judgment for defendant, and plaintiffs appeal. Affirmed.

J. R. Kitchell, of Abbeville, and John L. Kennedy, of La Fayette, for plaintiffs.

Edwards & Greene, of Abbeville, for defendant.

PROVOSTY, J. This suit is by the children of defendant to interdict him on the alleged ground of senile dementia. He is 80 years old. His property is valued at about $75,000, consisting of some 2,000 acres of land and about 200 head of cattle. His occupation in life has been the raising of cattle and cultivating some 20 acres of land. He can no longer attend to the cattle in person, but has some one to do it for him. One of his sons is his agent for selling the cattle. There is no suggestion that the cattle are not well attended to or that the son agent is not faithful to his trust. The old man no longer cultivates any land, for the reason that he is unable to do it in person and has no one to do it for him. Three years before the filing of this suit he married a woman of 26. He had been a widower for 18 years. Asked why he remarried, he said:

"Because I was in trouble. I had no home; no woman to look after my household, and I thought I could support somebody at home who would take care of me. * * * I was alone with two little children, and I thought I had found a person who would take care of me. I had an affection for her and she for me."

He made no secret of his intended marriage, and was not beguiled into it; and three years after the event he seems not to regret having made the venture, quite the contrary. His testimony, covering 23 typewritten pages, not only does not show a weakened mentality, but, on the contrary, shows a pretty alert and vigorous one. Instances of breach of contract or promise which two of his children had in their testimony attributed to lapse of memory he explained in detail for justifying himself; and his explanation certainly shows that if his memory is weak his understanding and his faculty of telling his side of a story are not. He is shown to be very much more irritable than he used to be, and more

prone to using abusive language to his children than formerly. But irritability is not necessarily a sign of mental weakness, and the language may be no more than the manifestation of the irritation. And there may be more causes for irritation since he has incurred the displeasure of his children by making a will giving one-fourth of his property to his wife. Everything in the record, save, of course, the mere opinion evidence, and save also the facts which will be hereinafter specially referred to, would show the defendant to be still the fortunate possessor of a clear and vigorous intellect, and of a pretty good memory. For instance, on being asked the age of one of his sons, he answered that he did not remember it exactly, but that the son had testified the day before to his being 23 years. He remembered in minute detail practically everything he was examined and cross-examined about. To one of the questions, he answered that it had once before been put and answered. And in so saying he was right. That the defendant feels the burden of age and experiences the mental inertia incident thereto, which inclines one to lean upon others for relief from the cares of life, there can be no doubt; but apart from this the only facts adduced which might tend to indicate mental impairment are that on several occasions he was unable to compute the amount of change coming to him on making purchases, and that he appeared to be indifferent about paying his taxes of the past year, although in former years he had been vigilant in the matter. As to the inability to make change nothing shows that he was ever much of a hand at figures; he is illiterate. His ability in that regard may be little, but how much, if at all, less than heretofore, is not shown. The facts in connection with the payment of the taxes are that the friend who has heretofore been attending to the payment of his taxes for him had notified him repeatedly to remit the money for that purpose the past year, whereas in former years this had not been necessary; and even had had to pay them out of his own money because the remittance had not come in time. The true cause of this tardiness may have been lack of funds; but, even if it was indifference, this of itself would not necessarily show senile dementia. It is also said that the place where he lives has not the kept-up air it used to wear, but shows neglect. The defendant is old and has not the same energy, and his wife is more or less an invalid, under physician's care. We find no ground for interdiction.

Judgment affirmed.

MONROE, C. J., takes no part, not having heard the argument.